## RAILROAD COMMISSION OF TEXAS v. FAIN et al.

### No. 9271.

Court of Civil Appeals of Texas. Austin.

April 22, 1942.

Rehearing Denied May 6, 1942.

Gerald C. Mann, Atty. Gen., and James L. Noel, Tom D. Rowell, Jr., Fagan Dickson, James D. Smullen, and Ed Roy Simmons, Asst. Attys. Gen., for appellant.

Jos. W. Bailey, Jr., of Dallas, for appellees.

BAUGH, Justice.

Appeal is from a judgment of the District Court holding void as to three designated wells of Awoeb Oil Company a proration order of the Commission of May 1, 1941, for the Minnie Bock oil field in Nueces County; and granting a mandatory injunction compelling the Commission to grant to Earl Fain, Jr., a tender for 3,061 barrels of oil stored by him in said field.

The field involved consists of 40 wells and the reservoir energy consists of both water drive and gas pressure. The order involved fixed the allowable for the field at 34 barrels per well per day with no shut-down days. The attack made was that as to 1 well of Fain and 3 of Awoeb, the order caused, rather than prevented, waste, in that it would require appellees to operate their wells on an inefficient oil-gas ratio; would cause water to drown out the oil stratum; would result in an inefficient and improper use of reservoir energy, all of which are statutory definitions of waste set out in Art. 6014, R.C.S., Vernon's Ann.Civ.St. art. 6014. And further that the order would destroy in whole or in part the economic value of appellees' wells, amounting to confiscation.

The evidence before the Commission at the hearings on which it based its order was not presented to the trial court. It appears that the trial court granted a temporary restraining order authorizing Fain to produce his well at 114 barrels per day; and Awoeb to produce its wells 1, 2 and 3 at 118, 112 and 46 barrels per day, respectively, and that said applicants so operated their wells thereafter. At the trial on the merits here appealed from, the evidence on the hearing of the application for the temporary order was introduced, and in addition other evidence, including that as to what had occurred to other wells in this field since the temporary order was granted and the appellees had been producing the additional oil from their wells authorized by the restraining order. After the granting of the temporary order and before the hearing on the merits, Fain's well ceased to flow, hence the order here appealed from related only to the 3 wells of Awoeb Oil Company.

There was evidence to show that compliance with the 34-barrel allowable would result in Awoeb's wells ceasing to flow "on their own power"; cause the well bore to choke up with sand; require the wells to be shut down, casing to be pulled, the wells cleaned out, artificial energy applied to produce them, cause a greater percentage of water than if allowed to flow from reservoir energy, and that the production permitted by the injunction was the lowest rate at which they would produce on existing reservoir energy. In brief, that the allowable prescribed by the order, would as to these particular wells require resort to methods of production which the statute (Art. 6014) defines as waste.

■ On the other hand, with regard to the field as a whole, there was evidence to show that production in excess of the 34 barrels per day, fixed by the Commission, would exceed the market demand, would cause a premature encroachment of water, would dissipate the gas energy, shorten the life of the field, diminish its ultimate aggregate recovery of oil, and cause waste in the field as a whole. While appellees contend that their wells are situated higher on the structure and will, if permitted, produce longer, without artificial lift, than other wells in the field; there was evidence that during the period after these wells, under the temporary restraining order, had been producing at the rates permitted, and prior to the time of the trial, the wells on the surrounding leases in the rest of the field had rapidly gone to water as a result of such increased production from the Fain and Awoeb wells, and that the reservoir energy, both water and gas, had been materially reduced. It appearing that the underground conditions in this field were substantially uniform, the sand very porous and permeable, it is manifest that if appellees' wells are to be given production three times as great as that found by the Commission for the field as a whole, then that the other operators must be given a like increase to avoid discrimination against them. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73. This would result in increasing threefold the total allowable for the field fixed by the Commission; create discrimination in favor of this field against other fields of like character; and, according to the testimony of expert witnesses, dissipate the reservoir energy of the field as a whole, and prematurely shorten the life of all wells in the field and reduce its potential production.

■ Even if it be admitted that all of appellees' contentions as to waste applicable to their particular wells be true, the Commission was confronted with the problem as to how conservation as to the entire field would best be subserved; and must decide that question with reference to the field as a whole. If, therefore, greater waste be caused to the other 36 wells in the field by permitting the 4 to produce in such manner as to minimize waste in the 4 particular wells, than would result from limiting all wells to a uniform producing pattern, though in doing so some waste be caused as to the 4 particular wells, then the order must be sustained as a conservation measure. The situation thus presented was one for the Commission to determine. Nor was the Commission confined, in considering the field as a whole, and its relation to the other similar oil fields in the State, to any one particular cause of waste enumerated in Art. 6014. That Article deals with both underground and above ground waste; and provides that "The Commission may consider any or all of the above definitions" in making its conservation rules and regulations. When they conflict, or present a dilemma, as they appear to have done here, it is for the Commission to determine what on the whole will best conserve the natural resources. And if that determination finds support in substantial evidence, though the evidence be conflicting, the order should stand.

■ Nor is the fact that the Commission's order will result in economic loss to appellees controlling. Any order of the Commission limiting density of drilling, daily allowable per well, or controlling storage, transportation and marketing necessarily affects property values and profits from production of oil. But this is necessarily incident to the police power of the State to regulate any business affected with a public interest, so long as it treats all alike.

It follows therefore that the trial court's judgment, in so far as it sets aside the Commission's order as void, must be reversed and the injunction dissolved. Since, however, it appears that part of the 3,061 barrels of oil belonging to Earl Fain, Jr., for which the Commission was directed to issue tenders, was produced, under injunction, in excess of the 34 barrels per day allowable; and part produced by well tests made under the direction and supervision of the Commission's engineers, it was not shown that Fain was not entitled to a tender for any of said oil. This reversal therefore is without prejudice to the rights of Earl Fain, Jr., to again present this matter to the Commission to determine what part, if any, of said oil he is legally entitled to market.

Reversed and injunction dissolved.