CHENOWETH et al. v. RAILROAD COM-
MISSION et al.

No. 9475.

Court of Civil Appeals of Texas. Austin.
Nov. 22, 1944.

Rehearing Denied Jan. 3, 1945.

W. H. Kennon and Neal E. Beaton, both
of San Antonio, for appellants.

Grover Sellers, Atty. Gen., and Harris Toler, Ed Roy Simmons, and Geo. W. Barcus, Asst. Attys. Gen., for appellee Railroad Commission.

Swearingen & Miller, of San Antonio, for appellee Nordan & Morris.

BAUGH, Justice.

L. V. Chenoweth and J. E. Johnson, owners of two producing gas wells in the Lopeno Field, in Zapata County, Texas, sued the Railroad Commission of Texas and L. A. Nordan and Mrs. John G. Morris, composing the partnership of Nordan & Morris, as an appeal "to review the order and action of the Railroad Commission," dated January 11, 1944, wherein the Commission by written order denied to the plaintiffs, appellants here, the findings and relief sought by them in a petition addressed to the Commission. The trial court sustained certain exceptions to plaintiffs' petition and pleas in abatement made severally by the Commission and the other defendants, and upon the refusal of the plaintiffs to amend, dismissed the suit; hence this appeal.

This suit is, in effect, a continuation of the controversy adjudicated between the plaintiffs and Nordan & Morris in the District Court of Bexar County, Chenoweth v. Nordan & Morris, Tex.Civ.App., reported in 171 S.W.2d 386. There were 21 producing wells on approximately 2,900 acres in said field. Nordan & Morris owned and operated a collecting pipe line system, taking all of the field allowable from said wells and delivering same to another pipe line, not owned by them, which sold and transported such output to consumers. One of appellants' wells was on a 20-acre tract and the other on a 22.86-acre tract. The other 19 wells were on tracts varying in size from 20 acres to 457 acres. Nordan & Morris applied to the Railroad Commission for a proration order for all of the wells in said field, which the Commission declined to issue on the ground that no question of waste was involved. Nordan & Morris then themselves prorated the allowable for the entire field at 25% on a well basis and 75% on the acreage on which each well was located. This resulted in a per well take of from 9,000,000 cu. feet of gas per month from one of appellants' wells on its 20-acre tract, to a maximum of 112,000,000 cu. feet per month from a well of Venture Petroleum Corporation on its 457-acre tract.

After the judgment in the Bexar County suit became final, appellants filed with the Railroad Commission their written petition. reciting the prior court proceedings wherein they alleged that the formula adopted by Nordan & Morris was arbitrary and discriminated against them; that in the absence of specific proration formula fixed by the Commission the acreage unit for proration was that fixed by the spacing provisions of Rule 37, that is, one well to 20 acres; and prayed that the Commission "order, adjudge and determine" (a) that Nordan & Morris were common purchasers of gas within the meaning of Vernon's Ann.Civ.St., Art. 6049a, Secs. 8, 8a, and 8aa; (b) that under the formula adopted by them Nordan & Morris were discriminating against appellants and in favor of other wells in which Nordan & Morris had an interest; (c), (d), (e), (f), (g) that the spacing provisions of Rule 37 (one well to 20 acres) applicable to this field fixed the efficient drainage area around each of such wells; that Rule 37 determined the correlative rights of all such producers as contemplated by Sec. 1 of Art. 6008, Vernon's Ann.Civ.St.; and that the refusal by the Commission of Nordan & Morris's application for a proration schedule for the field amounted to, and was intended to be, a finding by the Commission that the spacing provisions of Rule 37 fixed an acreage unit of 20 acres per well for purposes of prorating the take of gas therefrom. In brief, since none of the wells in said field were located on tracts of less than 20 acres, and the underground conditions were substantially uniform, each well in the field was entitled an equal pro rata amount of the total allowable for the field.

It is to be noted that in appellants' application to the Commission and in the hearing had thereon (a copy of the record of such hearing being attached to, and made a part of, appellants' petition in the instant suit) the appellants asked only that Nordan & Morris be cited to appear. The other producers in said field were not cited and did not participate in said hearing. Appellants did not seek, and in the hearing declined to ask for, a proration order for the entire field based upon all the factors which the Commission is directed by statute, Art. 6008, Vernon's Ann.Civ. to take into consideration. On the contrary, they sought, in essence, that the Commission find and determine that the 20-acre spacing pattern for drilling wells in this field prescribed by Rule 37, constituted the acreage unit per well fixed by the Commission for proration purposes of the entire field; and that Nordan

& Morris's departure from that pattern was discriminatory against them. In the order, here appealed from, the Commission recited "said petition and the findings and relief therein prayed for should be in all things denied, and it is accordingly so ordered * * *." While appellants, in their petition presented to the Commission did, in the last paragraph thereof, ask for general relief, the hearing clearly indicates that they sought only the relief above indicated. That is, they sought only to have the Commission approve and confirm their contention that Rule 37 prescribed the acreage unit pattern for proration purposes; and that the formula applied by Nordan & Morris was discriminatory.

In their petition in the instant suit, appellants made numerous allegations involving the facts above stated, the various prior proceedings both in the Bexar County suit and before the Commission, including allegations of fraud and conspiracy by Nordan & Morris in connection with the purchase contract with appellants litigated in the Bexar County suit; that Nordan & Morris knew, when said contract was made that appellants were relying on the 20-acre spacing under Rule 37 as establishing and defining the acreage unit; that such fact gave them a vested right in such spacing pattern which Nordan & Morris were estopped to deny; that having declined to issue any proration order based on acreage, the 20-acre spacing rule controlled, under the law, the amount of gas each well was entitled to produce and market and was the only lawful criterion for determining such quantity; and that the formula adopted by Nordan & Morris discriminated against appellants. They prayed that the court find and determine (1) that the formula adopted by Nordan & Morris violates the provisions of Secs. 8, 8a, and 8aa, Art. 6049a, Vernon's Ann.Civ.St.; (2) that the only lawful criterion defining the acreage unit in effect when appellants made their contract with Nordan & Morris and when the hearing was had before the Commission, was the 20-acre spacing rule; that Nordan & Morris be enjoined from such discrimination; that the court determine the future quantities of purchase per well in accordance with the spacing rule and order and direct Nordan & Morris to make such purchases accordingly.

The Railroad Commission filed its plea in abatement asking that it be dismissed from the suit, because: (a) The suit is for mandamus against the Commission to per-

form a particular act of which only the Supreme Court has jurisdiction; (b) if not for mandamus, then no relief is sought against the Commission; and (c) that since this suit was filed the Railroad Commission has held a general proration hearing on said field and found, as authorized under Secs. 10, 13 and 14, Art. 6008, Vernon's Ann.Civ.St., the efficient drainage area surrounding a well in that field to be 640 acres, which renders the instant case moot. All of these pleas were sustained by the trial court.

Nordan & Morris lodged numerous special exceptions to appellants' petition, all of which were sustained. The points of error asserted by appellants are based on the action of the court in sustaining these various exceptions. We shall not undertake to set them out in detail, but confine our consideration herein to those which we deem controlling and determinative.

Among other things these exceptions present the contentions of Nordan & Morris that (a) the same matters alleged in the instant suit were presented in the Bexar County suit and there finally adjudicated. (b) That appellants' petition contains no allegations that the findings of the Commission on their petition to that body are not supported by substantial proof. (a) That on the contrary the record of the hearing before the Commission (attached to and made a part by reference of appellants' petition herein) shows that such findings were supported by overwhelming proof. (d) That allegations of fraud and conspiracy by Nordan & Morris in inducing appellants to execute the purchase contract were matters over which the Commission had no jurisdiction and consequently the District Court of Travis County could acquire none. (e) That appellants' interpretation of Rule 37 as fixing an acreage unit of 20 acres per well for purposes of proration of gas produced therefrom, and their reliance thereon, gave them no vested right to apply such proration pattern or formula. We deem it unnecessary to set forth the other exceptions made and sustained.

■ It is to be noted that at the time this suit was filed the Commission had issued no proration order for the Lopeno Field. It had apparently, based on market demand, limited the overall output from the field to 800,-000,000 cubic feet per month. Nor was the jurisdiction of the Commission invoked by appellants in the hearing before it to issue a general proration order for the field. The

714

appellants specifically denied in that hearing that such was their purpose. They sought to have the Commission determine only two things: 1. That the 20-acre spacing provisions of Rule 37 constituted a finding by the Commission of the acreage unit for well allowables—that is, that 20· acres was the efficient drainage area of a well in that field. And 2. That the formula adopted by Nordan & Morris, none having been prescribed by the Commission, discriminated against appellants. A careful reading of the application presented by appellants to the Commission and of their petition in the trial court, shows that their contentions are predicated and dependent upon whether or not the spacing rule of 20 acres to a well prescribed the efficient drainage area surrounding such well. If it did not, then there was not presented to the Commission, nor is there alleged in appellants' petition in this suit, sufficient facts on which to base a proration order for the entire field fair to all producers alike. The question of whether or not the spacing rule fixed as a matter of law the efficient drainage area of a well in this field at 20 acres was specifically and expressly adjudicated against appellants in the Bexar County suit, and no useful purpose would be subserved by further discussion of it here.

While that determination in effect also disposes of the issue of discrimination urged by appellants based upon such spacing pattern, we will consider that question separately. Art. 6049d, Sec. 4, Vernon's Ann. Civ.St., makes it the duty of the Commission to ascertain market demand from a given field and to allocate production "among the various producers on a reasonable basis * * *." Sec. 14 of Art. 6008 extends that duty and power to limit such production also on a waste prevention basis. Sec. 10 of Art. 6008 imposes on the Commission the duty not only of waste prevention but also "adjustment of correlative rights and opportunities" of the various producers; and Sec. 13 of that Article prescribes the factors to be considered by the Commission in determining such allowables. Among them the "size of the tract" on which the well is located, not in excess of "the efficient drainage area of such well or wells * * * which drainage area shall be determined by the Commission"; the relation between the aggregate daily capacity of a particular well to the aggregate capacity of all wells in the field "producing the same kind of gas in the same common reservoir or zone"; and in

ascertaining the efficient drainage area of a. well the Commission is required to take into account the productive capacity of a well, formation pressure, sand permeability and porosity, the well bore's structural position, and all other pertinent factors.

Undoubtedly the Commission had the power, and when the conditions prescribed in Sec. 11 of Art. 6008 were shown to exist, it was its duty to promulgate a proration order for the field. But in doing so it was required to base same on the factors prescribed by the statute. ·Not having done so, not having determined the efficient drainage area of any well in the field, and not having undertaken any "adjustment of correlative rights and opportunities" of the producers, as required to do by Sec. 10 of Art. 6008; and the appellants not having invoked its jurisdiction for that purpose; in order for the trial court to determine whether the formula adopted by Nordan & Morris, absent one prescribed by the Commission, discriminated against their wells, it was incumbent upon them to allege the factors prescribed by the statute for Commission guidance, applicable alike to their wells and to the other wells in the field, in order to enable the trial court to determine whether or not the formula complained of discriminated against them. This their petition wholly failed to do, and was subject to the exceptions lodged against it on that ground. Not only did they fail to allege the facts prescribed by the statute on which discrimination, vel non, must be determined; but the hearing before the Commission on appellants' petition to it claiming discrimination, disclosed that underlying the Lopeno Field are some 10 separate gas saturated sands at different depths, of different thicknesses, and differing original pressures. That the producing wells differed in sizes of the well bores, the structural positions on the sand, in the sand strata penetrated, and in potential capacities. Thus there was additionally presented the question of whether all wells were producing from a "common reservoir" as contemplated by the statute, and if not, what portion of the total allowable for the field should be allocated to the different sand strata from which gas was being produced.

Nor did the appellants secure, by virtue of the spacing rule, any vested rights as against proration of output from their wells. The Railroad Commission is clothed by statute with power to prevent waste and to conserve the natural resources of the

State in several different ways, e. g. well spacing, curtailment of production to market demand, control over storage above ground, of oil-gas ratio in operation of wells, drilling regulations, plugging of abandoned wells, etc. All wells drilled and production therefrom are subject to regulation by the Commission within the limits authorized by law, and the Commission is empowered, within prescribed statutory limits, to amend, change or revoke its orders and regulations when necessary to conserve the natural resources. It is settled law that when an owner or operator invests his money and drills a well in keeping with an existing valid order of the Commission he acquires property rights which he is entitled to have protected. The most common instance in such cases is where an owner has drilled his tract to a density authorized by the old oil spacing provisions of 150–300 feet. Change of the spacings to 330–660 feet cannot operate to destroy his property rights legally acquired in the wells already drilled under the former spacing provisions. But such owner or operator acquires no vested right to continue to produce the same amount of oil or gas during the life of such well as was fixed by the proration schedule in force at the time he drilled such well. The spacing provisions relate primarily to prevention of waste by too dense drilling of a given field, and to prevent confiscation of the property of others. That is, primarily to underground conditions. Curtailment of production, and consequent proration, is based primarily on market demand and excess or wasteful storage,—above ground conditions. While both are related and have a common objective, spacing and proration are distinct and separate powers and processes. The only vested rights claimed by appellants were those based upon their construction that the 20-acre spacing provisions constituted an official determination by the Commission that 20 acres was the efficient drainage area of each well within the meaning of Sec. 13 of Art. 6008, Vernon's Ann. Civ.St. The Bexar County suit (Chenoweth v. Nordan & Morris, Tex.Civ.App., 171 S. W.2d 386) determined that issue to the contrary. Consequently they could have acquired no vested rights under their erroneous interpretation of such spacing pattern.

Appellants also urge that when the Commission entered its order of March 29, 1944, set forth in Railroad Commission's plea in abatement, wherein the Commission found the efficient drainage area of one well in the Lopeno Field to be 640 acres, it was without jurisdiction to do so, because of the pendency of this suit.

It is now settled law that when suit is brought in a court of competent jurisdiction to test the validity of a Railroad Commission order, the Commission loses jurisdiction over the subject matter of such order, during the pendency of such suit. Edgar v. Stanolind Oil & Gas Co., Tex.Civ. App., 90 S.W.2d 656; Railroad Commission v. Wencker, 140 Tex. 527, 168 S.W.2d 625. As above stated the appellants did not invoke the jurisdiction of the Commission for the purpose of promulgating a general proration order for the Lopeno Field, and the other producers in that field were not notified and did not participate in that hearing. The appellants themselves expressly denied any such purpose. The matter presented to the Commission was in effect a request that the Commission interpret the spacing provisions of Rule 37 for this field as meaning something which the Bexar County suit had already adjudicated that it did not mean. And the question of discrimination against which appellants sought relief was predicated upon their own erroneous interpretation of such rule, and not upon the factors which the Commission is required by law to take into consideration in determining correlative rights of producers so as to prevent discrimination. Having thus invoked the jurisdiction of the Commission for a limited purpose only, which did not include proration of the field as a whole, the order of the Commission refusing appellants the specific relief sought by them, did not deprive the Commission of jurisdiction to issue such general order for the field applicable alike to all producers in the field.

It is also obvious that under the circumstances presented in the instant case, the Commission not having issued, and sufficient facts not having been presented to it on which to issue, a general proration order for the field; the trial court could not, as prayed for by appellants, in effect by judgment fix such allowables and require a common purchaser to purchase same. To do so would be tantamount to writing a proration order for the Commission. This the court had no power to do.

We have not undertaken to discuss all the contentions made by appellants; but those above discussed, in our opinion, are

controlling and determinative and sustain the judgment of the trial court.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.