RAILROAD COMMISSION OF TEXAS ET AL V.
ROWAN OIL COMPANY ET AL. NO. A-4156.
RAILROAD COMMISSION OF TEXAS ET AL V.
ARTHUR HARVEY ET AL. No. A-4157.
RAILROAD COMMISSION OF TEXAS ET AL V.
PLYMOUTH OIL COMPANY. NO. A-4158.
RAILROAD COMMISSION OF TEXAS ET AL V.
REPUBLIC NATURAL GAS COMPANY NO. A-4159.
RAILROAD COMMISSION OF TEXAS ET AL V.
BLACKWOOD & NICHOLS COMPANY NO. A-4160.

Decided June 10, 1953.
Rehearing overruled June 30, 1953.
(259 S. W. 2d Series 173)

440

*John Ben Sheppard,* Attorney General and *C. K. Richards* and *Dean J. Capp,* Assistant Attorneys General, appeared for the appellants, Railroad Commission, in all five cases.

The trial court erred in partially invalidating the "surface waste" order for the Sprayberry oil field by granting a permanent injunction restraining its enforcement against appellees. The Railroad Commission had the power to grant the order in question, which is reasonable and just and its enforcement feasible and practicable. It is not arbitrary or discriminatory and is reasonably supported by substantial evidence. Railroad Commission v. Shell Oil Co., 146 Texas 286, 206 S.W. 2d 235; Brown v. Humble Oil & Refining Co., 126 Texas 296, 83 S. W. 2d 935; Hawkins v. Texas Co., 146 Texas 511, 209 S.E. 2d 338; Corzelius v. Harrell, 143 Texas 509, 186 S.W. 2d 961.

*Black & Stayton* and *John W. Stayton,* of Austin, and *Carl W. Jones,* of Midland, *Rayburn L. Forster, Harry D. Turner* and *R. M. Williams,* all of Bartlesville, Okla., for Phillips Petroleum Co.; *Small, Small & Craig,* and *C. C. Small,* all of Austin, for Standard Oil Co., of Ohio, and *McGown, Godfrey, Logan & Decker* and *Harry L. Logan, Jr.,* of Fort Worth, for Ted Weiner, Internor, and other appellants.

As against the appellant the order is unreasonable, arbitrary and invalid in that each of said companies and operators have been diligent in installing gasoline plants and other equipment to process the casinghead gas for its liquid hydrocarbon content and in making arrangements for ultimate consumption of the residue dry gas and in that the financial loss and damage that will be caused said companies if their wells are shut down will greatly exceed in amount the value of the gas that will be saved thereby, and it was error for the trial court to so hold. Railroad Commission of Texas v. Sterling Oil & Refining Company, 147 Texas 547, 218 S. W. 2d 415; Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas 396, 84 S. W. 648; Missouri, K. & T. Ry. Co. v. Rockwall County Levee Imp. Dist., 117 Texas 34, 297 S. W. 206.

*Tilley, Hyder & Law* and *Elton M. Hyder, Jr.,* of Fort Worth, for Rowan Oil Co.; *Perkins, German, Mims & Bell, W. P. Z. German, Jr.,* and *Kelly Bell,* of Midland, for Arthur Harvey; *Graves, Dougherty & Greenhill,* of Austin, and *Morton Taylor,* of Midland, for Plymouth Oil Co.; Republic Natural Gas Co., and Blackwood & Nichols Co.; *Weeks & Hankerson and W. F. Weeks, Jr.,* of Tyler, for British-American Oil Producing Co.; *Dan Moody, of Austin, Paxton Howard* and *Richard L. Hughston,* both of Midland, for Shell Oil Co. and others; *George Grant,* of San Antonio, for Hewgley Drilling Co., et al; *W. H. Slay,* of Fort Worth, for James H. Snowden; *Stubbeman, McRae & Sealy* and *Tom Sealy,* of Midland, for Ashland Oil & Refining Co., and others; *Robert T. Donahue,* of Austin for Cabot Carbon Co.; *Willis & McEntire,* of Fort Worth, for Mascho Oil Cities Service Co.; *W. B. Weaver,* of Fort Worth, for Cities Service Oil Co.; *Robertson, Jackson, Payne, Lancaster & Walker* and *A. W. Walker, Jr.,* of Fort Worth, for Vasser & Howard; *Hutcheson, Taliferro & Hutcheson,* of Houston and *Hardy Hollers,* of Austin, for Lloyd H. Smith et al; *Powell, Wirtz & Rauhut* and *Robert C. McGinnis,* of Austin, for Tide Water Associated Oil Co. and others; *Crenshaw, Scott & DeGeurin,* of Austin, for Union Oil Co. and others; *David W. Stephens,* and *John H. Bevan,* of Fort Worth, and *Stanley Hornsby* of Austin, for Gulf Oil Corporation, all appellees.

In reply to appellant Railroad Commission and also the other appellants above named, these appellees submit that the trial court correctly held that the order of the Railroad Commission in shutting down the oil wells in question was invalid as to these appellees, because said order was in violation of the

14th amendment to the U. S. Constitution and section 19 of the Bill of Rights of the Constitution of Texas, in that it deprives appellees of a valuable property right, the right of capture, and of the correlative rights of opportunity to produce their rightful allowances so long as they commit no waste, as defined by the statute or regulatory order. Eliff v. Texon Drilling Co., 146 Texas 575, 210 S. W. 2d 558; Railroad Com. of Texas v. Gulf Production Co., 134 Texas 122, 132 S. W. 2d 254; Patterson v. Stanolind Oil & Gas Co., 182 Okla. 155, 77 Pac. 2d 83.

MR. JUSTICE WILSON delivered the opinion of the Court.

This case reaches us as a direct appeal from the judgment of a trial court upon the validity of a Railroad Commission order.

■ The Spraberry oil trend stretches through five West Texas counties. The Commission by order established the entire trend as one field for administrative purposes. Oil is produced along with a great volume of casinghead gas. The prevention of the waste of gas is a well established public policy of the State of Texas. A second well established public policy is the protection of the correlative rights of all owners in a field so that each receives his fair share of the oil and gas. The order under attack is an attempt by the Railroad Commission to put into effect these two public policies. The controversy arises because there are not as yet enough facilities to use and market all the casinghead gas of that field, but some of it only. Yet the gas must be allowed to flow if oil is produced. Thus some operators had been marketing their gas and others had been flaring it. After a number of hearings the Commission issued an order preventing the flaring of gas and shutting down all production from the 2400 wells in this field in order to protect correlative rights until such time as facilities are available to market all gas. (Estimated to be January 1, 1954).

This order was attacked in five separate suits which were consolidated by the trial court into a three-way controversy. The State sought to sustain the order as written. The producers who were not flaring their gas sought and obtained from the trial court a modification exempting them from its operation and allowing them to produce. The flaring producers appealed to this court contending that the jurisdiction of the trial court was confined to approving or disapproving the order and that the trial court could not substitute itself for the administrative agency and promulgate a different order. They contend also that

the trial court's judgment allows their nonflaring competitors to drain their leases and confiscate their property through no fault of their own. They contend that the effect of the trial court's judgment is to allow 468 nonflaring wells to produce from a common reservoir in which 1800 flaring wells have been shut down.

The Railroad Commission shut down the flaring wells in order to prevent waste of gas. It shut in the nonflaring wells to prevent them from confiscating part of the oil and gas which would have been produced from the flaring wells but for the shutdown. That the Railroad Commission shut down completely the nonflaring wells in order to protect the correlative rights of the flaring wells is demonstrated by recitations in the following subsidiary order:

"WHEREAS, The Commission, in adopting Special Order No. 7 & 8 - 25,841 was of the opinion that elimination of the exceedingly wasteful flaring of casinghead gas problem would preserve an irreplaceable natural resource until such time as all such casinghead gas would be made available to a market; that the protection of correlative interests of the property owners in such field made mandatory a complete shut in of said field until facilities of sufficient capacity were available to care for all of the casinghead gas produced in said field; that since such facilities are not available to all, to allow some properties in said field to produce to a limited market would do violence to the correlative interest of offsetting properties that remain unconnected, not because due diligence to connect was not made by such property owner, but because the overall gathering, marketing, processing, transportation facilities of sufficient capacity for said casinghead gas is not available and will not be available in the near future."

■ An order of the Railroad Commission must be bottomed upon a specific grant of power either contained in the Constitution or delegated by the Legislature. Brown v. Humble Oil & Refining Co., 126 Texas 296, 83 S.W. 2d 935, 99 A. L. R. 1107. While Articles 6014-15 and 6049c, R.C.S. 1925, authorize wells to be shut down completely in order to prevent waste, these articles contain no grant of power authorizing the Railroad Commission to shut down a well completely in order to protect correlative rights.

■ Sections 10 and 11, Art. 6008, R.C.S. 1925, grant the Railroad Commission the power to regulate the flow from a non-

wasteful well in order to protect correlative rights. Henderson v. Thompson, 300 U. S. 258, 57 Sup. Ct. 447, 81 L. Ed. 632. Section 19 of Art. 6008 gives the Railroad Commission the power to zone a common reservoir and establish rules and regulations governing the production from each zone. However, the power to regulate the flow delegated in Art. 6008 does not include the power to shut down a nonwasteful well completely and stop the flow for an indeterminate time.

We are cited to no other statute applicable to this situation. Therefore, under the statutes, the Railroad Commission has the power to shut down a wasteful well and to regulate the flow from a nonwasteful well in order to protect correlative rights, but it has no power to shut down completely a nonwasteful well in order to protect correlative rights. Brown v. Humble Oil & Refining Co., supra; Corzelius v. Harrell, 143 Texas 509, 186 S.W. 2d 961; Danciger Oil & Refining Co., of Texas v. Railroad Commission of Texas, 49 S.W. 2d 837. We hold that portion of the order shutting down completely nonwasteful wells in order to protect correlative rights to be void because this action is not included within the power delegated to the Railroad Commission.

■ The statutes defining waste enumerate a number of wasteful practices but not all wasteful practices. The Railroad Commission has the power and the right to define factually what constitutes waste in a particular field so long as the definition is reasonable, nondiscriminatory, and nonconfiscatory. Railroad Commission v. Shell Oil Co., 146 Texas 286, 206 S.W. 2d 235. In that case this court said:

"The term *waste* has an ordinary and generally accepted meaning. Whatever the dictates of reason, fairness, and good judgment under all the facts would lead one to conclude is a wasteful practice in the production, storage or transportation of oil and gas, must be held to have been denounced by the Legislature as unlawful. * * *"

■ In the order under attack at bar the Commission determined that *any* flaring of gas in the Spraberry field is waste. Since it applies to all flaring operators equally it is not discriminatory. All property is held subject to a valid exercise of the police power. That some operators will have a less profitable operation, be delayed in recovering their gas, or be in trouble with their creditors does not affect the Commission's duty to enforce conservation by preventing waste. Neither does it make the Com-

mission's action arbitrary or confiscatory if correlative rights are protected.

■ It is urged that the Railroad Commission cannot define the flaring of gas as waste unless it first finds that the flaring operators have not been diligent in their efforts to make some productive use of the gas. This is based upon some of the language (but not the holding) to be found in Railroad Commission of Texas v. Shell Oil Co., supra, and Railroad Commission of Texas v. Sterling Oil & Ref. Company, 147 Texas 547, 218 S.W. 2d 415. Both of these cases make it abundantly clear that "the Constitution has vested in the law-making body the duty of preventing waste, not of part but of all of the natural resources of this State." Both cases make it clear that "each oil field presents a separate problem". After considering the complicated problems involved in financing, constructing, and operating the gathering, marketing, processing, and transportation facilities used in servicing a field, we have concluded that the question of waste cannot be measured by any such test as *diligence*. The proper function of the court is to examine each waste order separately in an effort to determine under the substantial evidence rule whether it is fair, reasonable, and nonconfiscatory. For example, a wildcat well in a remote section of the State might bring in a new field with a very high ratio of gas. Is the Railroad Commisison required to study each operator's capital structure, etc. to determine whether a failure to construct a pipe line or gasoline plant is a lack of diligence? Is one operator who has the capital to be held to a different standard from another who does not have available capital? The Railroad Commission's hands should not be tied so that it could not prevent the flaring of a great amount of gas in order to recover a small amount of oil even though there were no immediate market for the gas and even though no one could be blamed for the lack of market. A particular operator's capabilities or willingness to risk the construction of pipe lines or gasoline plants are not a limitation on the powers of the Railroad Commission to define waste for each field.

Our holding that the validity of a Commission order defining waste and shutting in wells committing waste cannot be measured by the diligence of the operator in seeking a useful outlet for his gas or oil should not be interpreted as a holding that an order would be valid if under the facts of the particular case it permitted a confiscation of the property of the operator whose well was closed. For a waste order to be valid it must be nonconfiscatory.

The Attorney General, speaking for the Railroad Commission, has asked that this order be either upheld or stricken in its entirety. Upon a consideration of the entire situation we hold this order to be such that because part must fall all must fall. In the judgments in some of these cases the trial court included directions to the Railroad Commission concerning the allowable. The Railroad Commission has made a courageous effort to prevent the waste of gas. It may be that through the use of administrative devices not available to the courts the Commission can work out its own solution preventing further waste of gas and protecting correlative rights under the broad powers to regulate the production of gas granted by Art. 6008, supra. Many considerations make it seem best to hold that where the courts strike down part of a field order, the court action should be limited to pointing out the infirmity in the order. Brown v. Humble Oil & Refining Company, supra; Marrs v. Railroad Commission, 142 Texas 293, 177 S.W. 2d 941. See also Railroad Commission v. Rowan & Nichols, 310 U. S. 573, 60 Sup. Ct. 1021, 84 L. Ed. 1368.

Accordingly, all judgments of the trial court in these five cases are reversed, the field order shutting down the entire Spraberry field (OIL AND GAS DOCKET NO. 125 & 126 #7 & 8 - 25,841) is adjudged to be void, and the Railroad Commission is enjoined from enforcing it.

Opinion delivered June 10, 1953.

Rehearing overruled June 30, 1953.