William J. MURRAY, Jr., et al., Appellants,

v.

R & M WELL SERVICING AND DRILLING COMPANY et al., Appellees.

No. 10467.

Court of Civil Appeals of Texas.

Austin.

Dec. 12, 1956.

Rehearing Denied Jan. 9, 1957.

**226**

John Ben Shepperd, Atty. Gen., Mert Starnes, Asst. Atty. Gen., Powell, Wirtz, Rauhut & McGinnis, Austin, for appellants.

Cofer & Cofer, Austin, Wm. N. Bonner, Houston, for appellees.

ARCHER, Chief Justice.

Appellees instituted this suit against the Railroad Commission of Texas and its members, seeking a temporary injunction to enjoin the Railroad Commission from restricting production from a gas well operated by appellees and for a declaratory judgment. Sohio Petroleum Company, Mound Company, Colorado Oil and Gas Corporation, K & H Operating Company and Ray Reynolds intervened, praying that the applicable proration and waste orders of the Railroad Commission be sustained and held valid. The District Court entered an order of temporary injunction enjoining the Railroad Commission from interfering with the production of 204,000 cubic feet of gas per producing day from appellees' well.

The appeal is before this Court on the point of error as follows:

"The District Court erred in enjoining the Railroad Commission from interfering with appellees in the production of 204,000 cubic feet of gas per producing day from their well."

This appeal on the part of appellants presents the question of whether the Railroad Commission is required as a matter of law under Article 6008, Vernon's Ann. Civ.St., to grant an additional allowable or allowable credit to a gas well which is overproduced, so as to enable the well to make up its overproduction within a six months period, even though the granting of such allowable credit will cause physical waste.

While on the part of appellees is presented the question of: Does it clearly appear that the trial court abused its discretion in granting the temporary restraining order permitting the largest gas well in

Montgomery County or Harris County (210 MMCF per day potential), which had been completely shut in from January 10, 1955 to September 8, 1956 and which had allowables assigned it of more than 1 MMCF per day every day, to be opened up and operated at a 6(b) allowable of 204MCF per day for 15 or 16 producing days a month, under circumstances shown by plaintiffs' verified petition not traversed or denied by pleading or evidence of the defendant or intervenors?

The facts in this case are undisputed: Appellees are the owners and operators of a gas well located in Harris County in the South Decker's Prairie (Segment A) known as Witt Well No. 1 and is producing gas from the same common reservoir as twenty four oil wells, owned and operated by intervenors.

On January 16, 1954 appellees' Witt well was placed on production, it was classified as being in the Decker's Prairie Field, a prorated gas field, and assigned monthly allowables, in accordance with applicable field rules, and the well was not granted a statewide allowable of 25% of its daily open flow potential.

From January 16, 1954 until September 1, 1954 the Witt well produced in excess of its assigned allowables 85,729,000 cubic feet of gas.

Subsequent to a public hearing the Commission issued its order effective September 13, 1954 classifying the Witt No. 1 as being in South Decker's Prairie (Segment A) oil field and subjected such well to the provisions of statewide Rule 6(b) and motion for rehearing was denied October 4, 1954.

Article 6008, Section 3, provides that the production of gas in such manner as to constitute waste is declared to be unlawful. Section 12 makes it the duty of the Commission to determine the status of gas production from all reservoirs in the State, and if waste exists proper orders shall be made to regulate the production.

Articles 6014, 6029 and 6049c, Section 7, confers power to the Commission to make rules and to enter orders to prevent waste of crude petroleum and natural gas.

On October 20, 1944, the Commission amended Rule 6 theretofore adopted by it by adding a volumetric displacement rule for gas wells producing from the same horizon in which oil wells are completed so that Rule 6(b) "Any gas well producing from the same reservoir in which oil wells are completed and producing shall be allowed to produce daily only that amount of gas which is the volumetric equivalent in reservoir displacement of the gas and oil produced from that oil well in the reservoir which withdraws the maximum amount of gas in the production of its daily oil allowable."

Under this rule the allowable for Witt No. 1 well was reduced substantially below its prior allowables. This order became effective September 13, 1954.

Witt Well No. 1 continued to overproduce until it was shut down in January, 1955, to such an extent that it was still overproduced even after a 20-months shut down on August 1, 1956.

There is no question as to the allowables month by month of the Witt Well No. 1, or as to the total production month by month and is set out in Defendants' Exhibit No. 7.

■ The application of statewide Rule 6(b) to Witt Well No. 1 was justified by the law and was within sound conservation practices.

Appellees were notified before the well was drilled that its proposed location appeared to the Commission to be in what the Commission considered as Decker's Prairie South (Segment A) oil field, and that any gas well completed in this field would be subjected to Rule 6(b). (Defendants' Exhibit 2A), Letter to Mr. Wm. Bonner dated May 22, 1953, in reply to a letter

regarding circumstances over which a well might be drilled.

There was testimony from an engineer employed by one of the intervenors that excessive production of gas from the gas cap will reduce pressure, resulting in less energy to drive oil to well bores causing an ultimate loss of oil. The witness further testified that the production of gas from the Witt Well No. 1 prior to September 13, 1954 was causing physical waste and would result in the loss of substantial quantities of oil.

We do not believe that all of the over-production on said well has been made up and compensated for because the well was shut down as to production since January 10, 1955, but that the overproduction should be accounted for before the well can be legally allowed to produce under Rule 6(b).

It is undisputed that the well has been overproduced in excess of, under all circumstances, at least 85,729,000 cubic feet of gas.

 Appellees appear to take the position that under the law regardless of the amount of overproduction which may have accrued and regardless of the allowables actually assigned to their well that the Commission must grant an allowable credit from the date Rule 6(b) became applicable in an amount sufficient to enable the well to make up its overproduction during the succeeding six months period. This is not permissible under the law and the Rules of the Commission.

Article 6008, Sections 10, 11, 12 and 13; Chenoweth v. Railroad Commission, Tex. Civ.App., 184 S.W.2d 711, er. ref., w. m.

The function to be served by a temporary injunction is to preserve the status quo, and such an order will be reversed only on a showing of a clear abuse of discretion.

The discretion of the trial court is not unlimited and does not extend to the erroneous application of the law to undisputed facts.

Southland Life Insurance Co. v. Egan, 126 Tex. 160, 86 S.W.2d 722; See: General Telephone Co. of the Southwest v. City of Wellington, Tex., 294 S.W.2d 385, also the similar case of General Telephone Co. of the Southwest v. City of Eden, Tex., 293 S.W.2d 753.

 That the court's order holding that the overproduction had been "made up and compensated for" is in effect a rewriting of the proration order for the Commission to do which the court was unauthorized.

Marrs v. Railroad Commission, 142 Tex. 293, 177 S.W.2d 941.

The judgment of the trial court is reversed and the temporary injunction is dissolved.

Reversed and temporary injunction dissolved.