**PAN AMERICAN PETROLEUM CORPO-RATION et al., Appellants,**

**v.**

**RAILROAD COMMISSION OF TEXAS et al., Appellees.**

No. 10745.

Court of Civil Appeals of Texas.

Austin.

April 6, 1960.

Rehearing Denied May 11, 1960.

Dissenting Opinion May 17, 1960.

Turner, Rodgers, Winn, Scurlock & Terry, Dallas, for Pan American Petroleum

# 426

Corp., L. A. Thompson, Tulsa, Okl., and J. K. Smith, Fort Worth, of counsel.

Powell, Rauhut, McGinnis, Reavley & Lockridge, Austin, and Frank L. Heard, Jr., Houston, for Humble Oil & Refining Co., Dillard Baker and Charles E. Shaver, Houston, of counsel.

Will Wilson, Atty. Gen., James N. Ludlum, First Asst. Atty. Gen., and Linward Shivers, Asst. Atty. Gen., for Railroad Commission of Texas.

Dee J. Kelly, Fort Worth, and Hart & Hart, Austin, for W. A. Moncrief, Jr.

ARCHER, Chief Justice.

This is an appeal from an order of the District Court granting motions for summary judgments to the defendants, The Railroad Commission and its members; and to W. A. Moncrief, Jr., as an intervenor; and denying the plaintiffs, Pan American Petroleum Corporation and the intervenor, Humble Oil & Refining Company, any relief.

On March 25, 1959 Pan American Petroleum Corporation filed suit under Section 8 of Art. 6049c, Vernon's Ann.Civ.St., against the Railroad Commission alleging that, in effect, the suit was an appeal from a decision of the Commission dated January 12, 1959, refusing a hearing and an application relative to revising the allocation formula, or for an adjustment of the allowables for the Emperor gas fields. Humble Oil & Refining Company intervened and aligned itself with Pan American; W. A. Moncrief, Jr. intervened and aligned himself with the Commission.

The Emperor Field consists of two separate gas reservoirs—the Devonian and the Ellenburger. The Commission promulgated rules for the Field in October and November, 1956, at which times there were five wells. In the interim of 1956 to 1959, 28 additional wells were drilled in the Devonian and 18 in the Ellenburger, the producing area was enlarged and pipelines built into the area.

Rule 3, of primary concern in this case, reads:

"Rule 3. The daily allowable production of gas from individual wells completed in a non-associated gas reservoir of the subject field shall be determined by allocating the allowable production, after deductions have been made for wells which are incapable of producing their gas allowables, among the individual wells in the following manner:

"(a) Two-thirds (⅔) of the allowed gas production from a non-associated gas reservoir shall be allocated to the individual wells completed therein in that proportion that the acreage assigned to each such well bears to the sum of the acreage in the reservoir.

"(b) One-third (⅓) of the allowed gas production from a non-associated gas reservoir shall be allocated equally among the individual wells completed therein.

"(c) The total daily non-associated gas allowable for each well shall be the sum of its acreage and per well allowable."

Rules 1, 2 and 3 for the Emperor (Devonian) Field were adopted for the Ellenburger, effective October 22, 1956. Appellant, Pan American, protested the allocation of production on the basis of the ⅓ well and ⅔ acreage factors.

The concluding sentence of the order reads: "It is further ordered that this cause be held open on the docket for such other and further orders as may be necessary."

On February 28, 1958, Moncrief filed an application for a permit to drill a well on a 5-acre tract as an "exception" to the spacing rule. After a hearing, at which appellant protested, a permit was granted on April 15, 1958. There is no question but that Moncrief's 5-acre tract was entitled to a permit to drill a well as a matter of

law under court decisions, and does not violate the subdivision rule.

On March 27, 1958 appellant applied to the Commission for a hearing to consider the revision of the allocation formula as set forth in Rule 3. A hearing was had and evidence offered and the application was denied on June 9, 1958.

On November 3, 1959 Moncrief filed an application to determine why only common purchasers of gas in the fields should not be required to take gas from his 5-acre tract in accordance with the formula. On January 2, 1959, a day set for a hearing on the application, appellant informed the Commission that it believed the notice was broad enough to permit introduction of evidence in regard to amending the allocation formula. This request was denied on January 5, 1959.

Appellant on January 8, 1959 made a formal application for a hearing to consider the revision of the formula for the fields, setting out that such formula was unreasonable, and that conditions had changed. On January 12, 1959 the Commission denied the request.

On February 24, 1959, the Commission entered its order to the common purchaser of gas in the fields requiring it to take all gas tendered for purchase in conformity with the allowable schedule.

This suit was filed on March 25, 1959.

The Commission filed its motion for summary judgment contending that the undisputed facts show that, as a matter of law, the plaintiff and Humble are estopped and barred by unreasonable delay and laches from obtaining the relief sought, and that there is no genuine issue, and set out the various actions of the Commission, which we have herein mentioned; and that no motion was filed for rehearing following the orders of the Commission issued in 1956, or the order granting Moncrief a permit in 1958, or to the denial by the Commission on June 9, 1958 of plaintiff's application for a revision of the formula for the fields. Subsequent to the promulgation of the field rules, the fields were developed by the completion of many gas wells at great expense, and some on less than 320 acres.

The motion for summary judgment further alleged that plaintiff and Humble waited more than two years after the allocation which was formulated was adopted by the Commission and nine months after the Commission had refused to revise the formula before filing suit attacking the orders; that it is important to the Railroad Commission, as a representative of the public generally, that proration or allocation formulas be as stable as reasonably possible and that the validity of such orders be determined with reasonable promptness; that the Commission acted within its lawful and reasonable discretion in refusing to grant to plaintiff a further hearing on the matter of the allocation formula, since three hearings had been held; and that, as a matter of law, the Commission properly provided in its ratable-take order that the common purchaser should take in accordance with the allocation formula.

Moncrief filed a motion for summary judgment alleging that the plaintiff and Humble are barred, as a matter of law, by unreasonable delay, laches, and estoppel from obtaining the relief sought, and also contained other allegations as to the entry of the orders in 1956 making the allowable formula and as to the application for a permit to drill a well; order granting the permit, and that no motions for rehearing were filed, and no notice was given Moncrief of an intention to attack the formula, and of drilling of the well at a cost of $468,259.28, and of reliance on the failure of plaintiff to file any motions for rehearing, or to file a suit for over two and a half years.

The affidavit of W. A. Moncrief, Jr. was attached to the motion in which the history of the Emperor Field with a recitation in sequence of the orders and actions of the Commission in making the allowable formula; the granting of the permit and the drilling of the well; lack of notice of an

intention by appellants to file a suit to attack the orders were set out.

O. D. Hyndman, secretary of the Commission, in his affidavit attached to Moncrief's motion, identified the several orders of the Commission, the completion reports of wells in the Emperor Field and all of the other motions and orders of the Commission as to permits and the allowable formula in the field.

The motions for summary judgment were granted by the court on July 23, 1959, and the plaintiff and Humble were denied any relief. It is from this judgment that the appeal is taken. The appeal is founded on 10 points assigned as error by the trial court, and are to the effect that the court erred in granting the judgment because it was not necessary as a prerequisite to a suit by appellant to file motions for rehearing; that the orders of the Commission are not final to the extent of depriving the Commission of jurisdiction to reconsider such orders; that the Commission's power is a continuing one and its orders are subject to change at any time; that no estoppel can exist in favor of either of appellees because there is no showing of inexcusable delay and injury; that a disputed fact issue was presented as to whether appellant was guilty of laches; that by a recital in the 1956 orders that causes were "held open on the docket for such other and further orders as may be necessary" was a recognition of its power to regulate production; protection of correlative rights is a continuing one; that no estoppel can exist in favor of Moncrief because he has no vested right in an order of the Commission, and drilled his well with full knowledge that the orders of the Commission are subject to change, and because he knew that appellant had protested the ⅓ and ⅔ allocation formula; that the plea of laches presents a question of fact; that appellant's application of January 8, 1956 contained a request that a hearing on the subject of adjustment of allowables be had, which was denied on January 12, 1959, and this suit is not subject to the plea of laches.

We do not believe the court erred in granting the summary judgment.

In plaintiff's original petition filed on March 25, 1959, the prayer was (1) that the allocation formula in the orders of October and November, 1956, be cancelled; (2) that the ratable-take order of February 24, 1959 be cancelled; and (3) that, in the alternative, the court order the Commission by mandatory injunction to grant a hearing on its application dated January 8, 1959 for a revision of the proration orders.

The Commission filed a motion for a severance claiming that the question of the validity of the proration orders of 1956 are distinct and separate questions from the validity of the ratable-take order of 1959, which motion was granted, and no error has been assigned to this action. Humble has assigned the action of the court as error, but we believe the order of severance was correct. Rules 41, 97(h) and 174, Texas Rules of Civil Procedure. Pure Oil Co. v. Fowler, Tex.Civ.App., 302 S.W.2d 461, er. ref. n. r. e. The Commission takes the position that the failure of Pan American to take legal action to set aside the 1956 orders was an unreasonable delay as a matter of law to bar the plaintiff and intervenor from making attacks on the proration orders, and that said orders are reasonable and valid. We believe that the plaintiff and intervenor—appellants here— were barred by unreasonable delay from attacking the proration orders, and that the Commission properly acted within its discretion in declining to call a fourth hearing on its allocation formula.

There is no dispute as to the relevant facts in the time and sequence in which the events occurred.

The question of long delay in attacking the orders of the Commission have been considered in Midas Oil Co. v. Stanolind Oil & Gas Co., 142 Tex. 417, 179 S.W.2d 243, and Board of Water Engineers of Texas v. Colorado River Municipal Water Dist., 152 Tex. 77, 254 S.W.2d 369.

In the Midas case the Supreme Court stated the law as follows [142 Tex. 417, 179 S.W.2d 245]:

"While the Act in question does not fix any time limit for the filing of a suit to set aside such a permit, it does provide that 'Such suit shall be advanced for trial and be determined as expeditiously as possible and no postponement thereof or continuance shall be granted except for reasons deemed imperative by the Court.' This very clearly evidences legislative recognition of the necessity of speedy action in such matters, and we are satisfied that it was the intention of the Legislature that such a suit should be filed within a reasonable time after the granting of the permit, and if an interested party fails to bring such suit within a reasonable time, and in the meantime the permittee begins the drilling of the well or otherwise incurs substantial obligations in the prosecution of his rights thereunder, the contestant should be held to have lost his right to prosecute such a suit."

In Dunbar v. Fuller, Tex.Civ.App., 253 S.W.2d 684, 686, er. ref., it was held that "the statute does not fix any time within which a rule, regulation or order of the Commission relating to conservation of oil or gas or drilling permits must be brought under review by the courts, but there should not be unusual delay, but should be done with reasonable diligence."

In the Board of Water Engineers case the court held:

" * * * In this case the implied finding of the trial court is that the delay was reasonable, but the facts of this case are very much stronger than those in the Midas case. Appellees not only stood by for seven months before filing suit, but during that period knew that Martin County took steps in May, 1951, to establish the District; that an election was ordered and conducted in July; that directors were named; and that rules and regulations were promulgated and published. Not only that, but they tacitly recognized the existence of the District by having their representatives meet with the directors. To hold that they could then be permitted to challenge the validity of the Board's order would be to approve a practice which would, if generally followed, clearly violate the legislative intent that there be no unnecessary delay in reviewing the Board's orders, and would disrupt the orderly steps of a state agency to cope with one of the most important and pressing problems confronting our State—the conservation of our limited supply of underground water. The purpose of our conservation statutes cannot be effectuated if litigants are permitted to delay attacks upon orders of the Board for seven months, during which time conservation districts have been organized agreeable with the order, confirmed by the voters, directors elected, and rules promulgated." [152 Tex. 77, 254 S.W.2d 372.]

■ As concerns the failure of the Commission to grant Pan American (a point not raised by Humble) a fourth hearing on the subject of the allocation formula in the Emperor Field, we note that three full hearings had been held previously by the Commission—the first on August 29, 1956, the second on October 10, 1956 and a third on May 1, 1958, and on each occasion the original orders were reaffirmed.

On November 3, 1958 notice was issued that a hearing would be held on January 15, 1959 on the application of Moncrief for a ratable-take order to require the common purchaser to take gas on the basis of the proration schedule. Subsequent to this notice, Pan American requested the Commission to call a hearing to "amend allocation formula" and that it be held concurrently with Moncrief's application. This request was denied on January 5, 1959, and on January 8, 1959 Pan American made another

application for "revision of the current allocation formula" and in the application it was recited that conditions have materially changed since the May 1, 1958 order. This application was denied on January 12, 1959.

In Railroad Commission of Texas v. Permian Basin Pipeline Co., Tex.Civ.App., 302 S.W.2d 238, er. ref., n. r. e., appeal dismissed 358 U.S. 37, 79 S.Ct. 21, 3 L.Ed.2d 43, there was before the court the question of, and the authority for the Commission, to enter a ratable-take order requiring a common purchaser to take gas in accordance with proration schedules, and such authority was upheld.

■ The proration orders are entered under the authority of Art. 6008, §§ 10–14, and Art. 6049c, § 7, and the ratable-take order is entered under the authority of § 8a of Art. 6049a.

Section 8, Art. 6049c, in part reads:

"Such suit shall be advanced for trial and be determined as expeditiously as possible and no postponement thereof or continuance shall be granted except for reasons deemed imperative by the Court."

The granting or refusal of further hearings on a matter which has previously been before the Commission on one or more earlier hearings is within the sound discretion of the Commission, and unless there is an abuse of discretion the courts do not interfere. Railroad Commission v. Herrin Transp. Co., Tex.Civ.App., 262 S.W.2d 426, er. ref., n. r. e.

73 C.J.S. Public Administrative Bodies and Procedure § 156, p. 490.

Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S.Ct. 1128, 88 L.Ed. 1420.

The court did not err in granting a severance of the action attacking the ratable-take order from the action attacking the proration orders of the Commission since such actions involve different orders of the Commission and different issues, and in the interest of orderly procedure separate trials were desirable.

As has been stated the proration orders were made in 1956, and the order concerning the ratable-take was made in 1959. In Pan American's original petition the prayer was that the allocation formula be cancelled and that the ratable-take order be cancelled. In Humble's petition in intervention the prayer was that the orders of the Commission establishing the allocation formula and ordering the common purchaser to take in accordance with the proration schedules be set aside. The trial court acted within its discretion in ordering the severance under Rule 41, T.R.C.P.

Actions to attack proration orders are separate from actions attacking the ratable-take order. The orders are entered under authority of different statutes, appeals are authorized under two different kinds of orders containing different provisions. Proration orders in gas fields are made under the provisions of Article 6008, §§ 1–14 and Art. 6049c, § 7, and ratable-take orders are issued under § 8a of Art. 6049a.

Suits questioning the validity of proration orders are authorized by § 8 of Art. 6049c, which contains the provision that in a trial the burden of proof is placed on the party attacking such order which is deemed prima facie valid. This statute has been construed to require trials under the substantial evidence rule.

Appeals from ratable-take orders are provided by § 12 of Art. 6049a, with the provision that such order may be reviewed in the manner presented by Art. 6453. The statute authorizes appeals from orders of the Commission relating to railroad operations and rates, and suits attacking any such orders shall be tried and determined as other civil cases.

The judgment of the trial court is affirmed.

GRAY, Justice (concurring).

I concur in the result reached by Chief Justice Archer affirming the judgment of the trial court in this cause. However, I do not agree that the doctrines of laches and estoppel are applicable to the issues presented.

On January 8, 1959 Pan American filed its application with the Commission seeking a revision of the allocation formula applicable to the field in question. This application contained allegations that conditions in the field have materially changed since the May 1, 1958 order. This application was denied by the Commission January 12, 1959. This suit is termed an appeal from that order.

As I understand the record appellants do not assert that changes in the conditions of the reservoir have developed since the May 1, 1958 order but say that numerous wells have been completed as producers in the field.

It is my opinion that if the record was such as to require an adjudication of the issues of changed conditions in the reservoir as presented to the Commission then the cause could not have been properly disposed of by summary judgment proceedings in the trial court. Such however is not the case before us. The mere completion of producing wells in the field are not such changed conditions as require the Commission to revise or amend its proration formulae—no change in the reservoir conditions being shown. If this were true then the completion of every producing well in the field would call for such revision and amendment and the rules of the Commission could never be reasonably stable.

HUGHES, Justice (dissenting).

It is my opinion that the Railroad Commission of Texas is not only vested with the power to but is charged with the duty of regulating the production of natural gas both for the prevention of waste and the protection of correlative rights.

It is also my opinion that this power and duty of the Commission is a continuing one and one which is not to be abridged or impeded by the act of any person and one which the Commission cannot voluntarily abrogate.

It is also my opinion that this power and duty of the Commission and its exercise is not dependent upon so-called change of conditions.

My reason for this last statement is that the Commission should have, and I believe does have, the power and duty to correct its mistakes if, perchance, it should make a mistake. There is authority for statement. In Magnolia Petroleum Co. v. New Process Production Co., 129 Tex. 617, 104 S.W.2d 1106, 1109, the Commission had entered an order denying a permit to drill a well and it was contended that the Commission was powerless to reconsider the matter and grant the permit in the absence of changed conditions. In overruling this contention the Court stated:

"After a careful study of the pertinent statutes and the rulings of the commission on the question for years, we have reached the conclusion that it ought to be held that the right of review, in spite of the absence of changed conditions, should be upheld."

See also Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73.

The effect of granting a permit is shown by the case of Midas Oil Co. v. Stanolind Oil & Gas Co., 142 Tex. 417, 179 S.W.2d 243. There a permit to drill was issued to Midas which acted under it. The Court held Stanolind estopped to attack the validity of the permit because of its unreasonable delay in filing suit.

The Midas well was and the Moncrief well here is, in my opinion, subject to regulation by the Commission. Our statutes provide:

"In recognition of past, present, and imminent evils occurring in the production and use of natural gas, as a result of waste in the production and use thereof in the absence of correlative opportunities of owners of gas in a common reservoir to produce and use the same, this law is enacted for the protection of public and private interests against such evils by prohibiting waste and compelling ratable production." Sec. 1, Art. 6008, V.A.C.S.

"It shall be the duty of the Commission to prorate and regulate the daily gas well production from each common reservoir in the manner and method herein set forth. The Commission shall prorate and regulate such production for the protection of public and private interests:

"(a) In the prevention of waste as 'waste' is herein defined.

"(b) In the adjustment of correlative rights and opportunities of each owner of gas in a common reservoir to produce and use or sell such gas as is permitted in this Article." Sec. 10, Art. 6008.

Commenting upon the authority conferred by these statutes upon the Commission, this Court in *Railroad Commission v. Humble Oil & Refining Co.*, 193 S.W.2d 824, 828, writ. ref., N.R.E., stated:

"The Commission's power to regulate oil production in the interest both of conservation and of protecting correlative rights is a continuing one, and its proration orders are subject to change, modification or amendment at any time, upon due notice and hearing, either upon the Commission's own motion or upon application of an interested party. This principle is now so well established as to require no citation of authority. It should also be noted that each of the proration orders governing the Hawkins field contained the following provision:

"'It is further ordered that this cause be held open on the docket for such other and further orders as may be necessary and supported by evidence of record.'

"Thus each order carried on its face notice to everyone thereafter dealing with properties in the field, that it was subject to appropriate change."

Other authorities of similar import are: Railroad Commission v. Marathon Oil Co., Tex.Civ.App. Austin, 89 S.W.2d 517, writ ref.; Railroad Commission of Texas v. Rowan & Nichols Oil Co., 310 U.S. 573, 60 S.Ct. 1021, 84 L.Ed. 1368; Id., 311 U.S. 570, 61 S.Ct. 343, 85 L.Ed. 358; Chenoweth v. Railroad Commission, Tex.Civ. App. Austin, 184 S.W.2d 711, writ. ref., w. o. m.

In the first Rowan case, supra, the Court in sustaining a proration order against the contention that it would cause unlawful drainage adopted the argument of the Railroad Commission in this language [310 U.S. 570, 60 S.Ct. 1025]:

"The Commission's experts insist that the threat, if existent at all, is speculative, and that the Commission's power of continuous oversight is readily available for relief if real danger should arise in the future."

In the second Rowan case, supra, also a proration case, the Court stated [311 U.S. 570, 61 S.Ct. 346]:

"The real answer to any claims of inequity or to any need of adjustment to shifting circumstances is the continuing supervisory power of the expert commission."

See also Railroad Commission of Texas v. Rowan Oil Co., 152 Tex. 439, 259 S.W. 2d 173, 176, where the Court stated:

"Sections 10 and 11, Art. 6008, R.C.S.1925, Vernon's Ann.Civ.Stat., grant the Railroad Commission the power to regulate the flow from a

nonwasteful well in order to protect correlative rights."

I adopt the following from the brief of Pan American:

"Nearly 25 years ago, the Supreme Court in the case of Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 938, 99 A.L.R. 1107 (1935), made the following statement:

" 'The oil industry in this state has become stupendous. There are now many separate oil fields operated in this state, under varying conditions. Texas is now the leading state in the production of oil and in oil refineries. The handling of this giant industry and its complex problems calls for the services of trained and experienced persons. It is utterly impossible for the Legislature to meet the demands of every detail in the passage of laws relating to the production of oil and gas. The necessities of the situation require that this duty be placed upon some tribunal to carry out some just and reasonable public policy. This duty is placed on the Railroad Commission.'

"Since that opinion was written, hundreds of additional oil and gas fields have been discovered; more than 100,000 additional wells have been drilled; oil and gas reserves have greatly increased; production of oil and gas has increased; an increasing amount of natural gas is being transported in long-distance pipelines and sold in interstate commerce; a vast amount of technical information has been obtained in regard to the performance and most efficient method of operating and producing oil and gas reservoirs; the technique of drilling, operating, producing and marketing has changed and will continue to change, and the appellate courts of this State have written hundred of opinions relative to these subjects.

"The Legislature certainly had in mind the fact that in numerous respects changes will always take place in the oil and gas industry, thus necessitating the continuous supervision of the Commission."

Clearly the Railroad Commission has the continuing duty to supervise and regulate the oil and gas industry within the limits of the power granted to it.

The validity of the exercise of this power is sustained under the police power of the State and specific constitutional authority. Brown v. Humble Oil & Refining Co., supra.

It is elemental that all property is held subject to the valid exercise of the police power of a State, and that the right of a legislative body to exercise this power cannot be bargained away or abrogated. Miller v. Letzerich, 121 Tex. 248, 49 S.W. 2d 404, 85 A.L.R. 451.

No one has a vested right in the continuance of rules of law beneficial to him, there being no deprivation of vested property rights. Middleton v. Texas Power & Light Co., 249 U.S. 152, 39 S.Ct. 227, 63 L.Ed. 527.

More specifically, no one has a vested right in the continuance of a proration order of the Commission even though its modification may result in economic loss to him.

In Railroad Commission of Texas v. Fain, 161 S.W.2d 498, 500, writ ref., w. o. m., this Court held:

"Nor is the fact that the Commission's order will result in economic loss to appellees controlling. Any order of the Commission limiting density of drilling, daily allowable per well, or controlling storage, transportation and marketing necessarily affects property values and profits from production of oil. But this is necessarily incident to the police power of the State to regulate any business affected with

a public interest, so long as it treats all alike."

There is a distinction between the regulation of a nonwasteful oil or gas well and its destruction. This was pointed out in Rowan, 152 Tex. 439, 259 S.W.2d 173, supra.

The same distinction differentiates the Midas and similar cases cited by the majority to sustain its holding on estoppel.

Midas is authority only for the rule that a private interested party may be estopped by long delay to question the validity of a permit to drill a test well for oil or gas when the permittee has incurred substantial obligations by reason of the permit. It is completely foreign to the authority and duty of the Commission to regulate production from the well once it is completed as a producer.

It is my opinion that laches and estoppel are inapplicable to the type of hearing and relief sought by Pan American and that the Commission and the Court below should have determined the matters presented upon their merits, and I would reverse and remand this cause for that purpose.