**MORGAN DRIVE AWAY, INC., et al.,**
**Appellants,**

**v.**

**RAILROAD COMMISSION OF TEXAS**
**et al., Appellees.**

**No. B–3684.**

Supreme Court of Texas.

April 25, 1973.

148

Robinson, Felts, Starnes & Nations, Mert Starnes and Phillip Robinson, Austin, for appellants.

John Hill, Atty. Gen., James H. Cowden and Rex H. White, Jr., Asst. Attys. Gen., Doherty & Robertson, James M. Doherty and Pat H. Robertson, Austin, for appellees.

STEAKLEY, Justice.

This is a direct appeal by Morgan Drive Away, Inc. and National Trailer Convoy, Inc., appellants, from a judgment of the trial court denying a permanent injunction on the ground of the validity of an order of the Railroad Commission granting Transit Homes, Inc. a specialized motor carrier certificate. Our jurisdiction is not questioned. See Sec. 3–b of Article V of the Constitution of Texas; Article 1738a;[1] Rule 499a, Texas Rules of Civil Procedure; Railroad Commission of Texas v.

Manziel, 361 S.W.2d 560, 93 A.L.R.2d 432 (Tex.1962); and Railroad Commission v. Shell Oil Co., 146 Tex. 286, 206 S.W.2d 235 (1947).

Transit Homes, Inc., an appellee here in addition to the Railroad Commission, is the holder of a specialized motor carrier certificate authorizing the transportation of used house trailers from Harlingen, Texas, to all points in Texas and vice versa. It filed application with the Commission to amend its certificate so as to authorize the transportation of the following commodities between all points in Texas:

(1) Trailers, including house trailers, mobile homes, and other structures moving on wheeled undercarriages;

(2) Appurtenances for the items named in (1) above, when moving therewith; and

(3) Equipment, materials and supplies used in connection with the items named in (1) and (2) above when moving therewith, between all points in Texas.

See Secs. 1(i) and 5a of Article 911b. The application was opposed by Morgan and National Trailer. Each is the holder of certificates issued by the Commission authorizing the transportation of house trailers between all points in Texas.

After hearing and various administrative steps, some later noticed, the Commission granted the application of Transit in its entirety. Morgan and National Trailer thereupon filed suit as an appeal under the provisions of Sec. 20 of Article 911b to set aside the granting order, and to enjoin Transit's operations under the certificate issued pursuant thereto. After trial to the court, a take nothing judgment was entered against Morgan and National Trailer and all injunctive relief sought by them was denied. This direct appeal was then taken.

Appellants level a three-pronged attack upon the order of the Commission. They

1. References are to Vernon's Ann.Civ.St.

say, first, that an initially served examiner's report to the Commission that recommended a denial of Transit's application "is still the only lawful order in this case," notwithstanding the subsequent withdrawal of the report as issued in error and the subsequent adoption by order of the Commission of a successor examiner's report that recommended the granting of the application. Appellants say, second, that, even so, the findings in the examiner's report which became those of the Commission by adoption in the Commission order, do not meet the fact finding requirements of Sec. 5a(d) of Article 911b. They cite our holdings to such effect in Miller v. Railroad Commission, 363 S.W.2d 244 (Tex.1962); Thompson v. Hovey Petroleum Co., 149 Tex. 554, 236 S.W.2d 491 (1951); and Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W.2d 759 (1951). Appellants say, finally, that the order of the Commission is not reasonably supported by substantial evidence. We overrule the first contention; sustain the second; and so do not reach the third.

The administrative circumstances giving rise to the first attack on the order of the Commission were these. Rule 43 of the effective Rules of Procedure for the Transportation Division of the Commission, the pertinent text of which is copied in the margin,[2] provides that in all contested proceedings the examiner for the Commission shall prepare and file a report and recommended order which shall be filed with the Director of the Division and served by him on each party of record. In this instance the examiner initially filed with the Director a report and recommendation that the application of Transit be denied. This was dated January 31, 1972

and was served on the parties. On the following February 2, the Director notified the parties that the report had been issued in error and that it was withdrawn. Then, under date of February 3, 1972, a successor report and recommended order likewise signed by the examiner was served on the parties, and this report recommended that Transit's application be granted in its entirety. Exceptions were filed by the appellants to the successor order and were overruled by the Commission. Under date of June 1, 1972, the Commission issued its official order in which, as to this, it was found that the initial report and recommended order was served as the result of a clerical error; that it was withdrawn by notice to all parties; and that its withdrawal was procedurally correct and legally effective.

■■■ A hearing examiner of the motor transportation division of the Railroad Commission serves the function of hearing the evidence offered by applicants for motor carrier operating rights, and that offered by existing carriers or other parties who may appear in opposition to the application. His subsequent report to the Commission, accompanied by a recommended order, is an internal administrative device whereby the examiner may report his findings and recommendation to the Commission. The report also performs the office of affording parties in disagreement an opportunity to present their views to the Commission in the form of exceptions prior to action of the Commission upon the report and recommended order. This administrative process thus brings to the Commission for official action in a contested proceeding the hearing record, the report and recommendation of the examin-

**2.** Rule 43: The Examiner's Report and Recommended Order.
In all contested proceedings, and in all uncontested proceedings wherein the examiner recommends action other than that sought by the applicant, petitioner, or complainant, he shall prepare and file with the Director a report and recommended order. . . . Such report and recommended order shall contain a brief statement of the nature of the case and the issues, a complete discussion of the evidence, the findings of fact and ultimate conclusions based thereon. A copy thereof shall be served forthwith by the Director on each party of record.

er, and the exceptions of parties that are adversely affected by the recommendation. The order of the Railroad Commission issued in response to all of this constitutes the official action of the Commission. It alone has binding force. An administrative mistake in the preliminary proceedings whereby a report and recommendation contrary to, and in fact not that of, the examiner is necessarily subject to correction; otherwise, the actual report and recommendation of the examiner would not receive the attention of the parties or be given consideration by the Commission. This is emphasized by the fact that the procedural rules of the Commission contemplate service upon the parties of the actual report and recommendation of the examiner, not a mistaken one; and it can properly be said that these rules also contemplate the inherent power of the Commission to approve and affirm corrective acts of its administrative personnel to accomplish this purpose. We hold that the erroneously issued report here was ineffective for any purpose.

■■ The Second and Third Points of Error which attack the granting order of the Commission are related. They require us to decide whether the fact findings in the order meet the statutory requirements; and, if so, whether the order is reasonably supported by substantial evidence. We recognized in Miller v. Railroad Commission, 363 S.W.2d 244 (Tex.1962), that assistance to the Courts in exercising their function of reviewing such orders is a statutory function of the fact finding requirement, and that the sufficiency of findings to meet the requirements of the statute must be related to the issues and the evidence in each case separately. This is but to recognize the logic that determination of the validity *vel non* of an administrative order under the precepts of the substantial evidence rule should be made in the light of the findings of fact upon which the order of the Commission is predicated, where such findings are required by statute. In such case it is reasonable to proceed from

the premise that the facts found were regarded by the Commission to have reasonable support in the evidence and to support its action. So a fact finding requirement has substantial statutory purpose and is more than a technical prerequisite.

The fact finding statutory requirement governing applications to operate as a specialized motor carrier is found in Sec. 5a(d) of Article 911b, as follows:

"The order of the Commission granting said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service."

The order of the Commission under attack contains the following:

"THE COMMISSION FINDS that after statutory notice the said application was heard before the Commission's Examiners, and that Examiner . . . made and filed his corrected report herein, served February 3, 1972, containing his findings of fact and conclusions of law thereon, which report is hereby adopted and made a part hereof, and said proceeding was duly submitted."

As thus stated, the Commission did not purport to independently set forth findings of fact; the parties agree, however, that the Commission adopted the report of the examiner and that we look there to determine compliance, or not, with the statutory fact finding requirements.

The adopted report is divided into three sections entitled Statement of the Case, Statement of Facts, and Discussions and Conclusions. It will not be quoted in full so as not to further extend this opinion. The parties recognize that the findings of fact are to be found, if at all, in the third section. These findings must relate, as the statute says, to the inadequacies in the services and facilities of the existing car-

riers and to the public need for the proposed service. The findings may be sufficient as to both, or as to neither, or as to only one. But under the statute they must be sufficient as to both for the order to stand.

■ The order under review contains a lengthy general discussion of conditions in the mobile home industry and perhaps findings of fact could be gleaned that point to the public need for the proposed service. But we do not reach this since the immediately apparent problem is the absence of findings of fact which qualify under the statute with respect to the services and facilities of the existing carriers. In their briefs, appellees point to portions of two paragraphs in the third section of the adopted order which they argue supplies the requisite findings of fact as to the existing services. These paragraphs are quoted in full in the margin,[3] and contain the only express reference in the adopted order to the adequacy or not of the existing services. It is also clear that the conclusions in the second of the two quoted paragraphs do not qualify as fact findings under the rationale of *Miller, supra,* where we held that statements that "service is inadequate in that the service is not available when needed" and "trucks and facilities are not available when needed" do not provide sufficient findings of basic facts from which the Court can determine if reasonable grounds existed for issuance for the order; as well as under the rationale of *Thompson, supra,* where similar statements

were recognized as no more than a finding of an ultimate conclusion, partly in the words of the statute.

So we turn to the first of the quoted paragraphs. Each of its three sentences is no more than a reference to the evidence with no stated findings of fact. Appellees quote as directly relating to this issue a portion of one sentence, as follows: "[p]rotestants have relied upon foreign-based power units, not properly registered with the Texas Railroad Commission, for the handling of intrastate traffic in Texas, contrary to the Commission's regulations." But this sentence begins as a recitation that "[t]he evidence further indicates that · in some instances . . .," so it is no more than a reference to the evidence without any purport as a finding of fact. Even so, it implies no more than an adverse criticism of the actions of the protesting carriers "in some instances." Appellees also urge the sentence which reads "[t]he public witness testimony includes specific testimony regarding instances wherein protestants have been unable to supply appropriate equipment when and as needed for the movement of traffic moving in Texas intrastate commerce." But here again the sentence is not drawn or stated in terms of a finding of fact; it is no more than a recitation of certain matters which were included in the public witness testimony.

■ Appellees say, however, that the first sentence in the next succeeding paragraph converts the foregoing into accepta-

---

3. "Virtually all of applicant's public witnesses complain of a lack of equipment availability from protestants Morgan and National. The public witness testimony includes specific testimony regarding instances wherein protestants have been unable to supply appropriate equipment when and as needed for the movement of traffic moving in Texas intrastate commerce. The evidence further indicates that in some instances protestants have relied upon foreign-based power units, not properly registered with the Texas Railroad Commission, for the handling of intrastate traffic in Texas, contrary to the Commission's regulations.

"In consideration of the above, the Examiner concludes that protestants are not providing a fully adequate service for the handling of the involved traffic in Texas intrastate commerce. Applicant has established by substantial evidence that the service proposed is required by the public convenience and necessity, and has established further that the service it proposes will result in a material improvement in existing transportation service."

ble and sufficient findings of fact. This sentence reads: "[i]n consideration of the above, the Examiner concludes that protestants are not providing a fully adequate service for the handling of the involved traffic in Texas intrastate commerce." Appellees argue that these sentences represent a finding that the public witnesses had been unable to secure trucks when needed; and that they constitute *"direct* findings that the examiner is relying upon such testimony in concluding that 'protestants are not providing a fully adequate service for the handling of the involved traffic in Texas intrastate commerce.'" It may well be that the Commission relied upon the recited evidence in reaching its conclusions; but there are no findings of fact pertaining to what may have been "included" in the public witness testimony, or to any inadequacies in the existing services. Quite clearly there are no findings of fact that are full and complete in pointing out such inadequacies in detail. We may consider only what was written by the Commission in its order, and we must measure its statutory sufficiency by what it says. This is the teaching of *Miller, Hovey, Thompson, supra*; and cf. Alamo Express, Inc. v. Union City Transfer, 158 Tex. 234, 309 S.W. 2d 815 (1958). The orders in *Hovey* and *Thompson* contained exhaustive summations of the evidence and it could have been inferred that the Commission subjectively relied thereon in the approval orders. But *Thompson* stands for the propositions that to be valid an order must contain more than references to the testimony of witnesses or to what their testimony may have included; and that summations of the evidence are not findings of fact. *Miller* says further that findings of basic facts cannot be presumed from findings of a conclusional nature; and that under the mandatory language of the statute, the findings of fact must fully and completely point out any inadequacies in the services and facilities of the existing carriers. Were we to reach the substantial evidence point, we would look in vain for findings

to test against the evidence in such respects.

Morgan Drive Away, Inc. v. Railroad Commission, 483 S.W.2d 320 (Tex.Civ. App.1972, writ ref'd n. r. e.), is urged by appellees as our most recent review of an order of the Commission granting motor carrier operating rights where the attack upon the order was as here. The intermediate court there stated that it had examined the order of the Commission and had concluded that the findings met the test stated in Miller v. Railroad Commission, *supra*, 363 S.W.2d 244, 246. We likewise examined the order and agreed with that conclusion. A comparison of the order there, and the one under review here, discloses controlling differences in the nature and completeness of the fact findings.

The judgment of the trial court is reversed and judgment is here rendered vacating the order of the Commission.

Dissenting opinion by POPE, J., joined by DENTON, J.

POPE, Justice (dissenting).

I respectfully dissent. The majority has concluded that the commission's order falls short of the statutory requirement that it contain full and complete findings of fact. Art. 911b, Sec. 5a(d). The order incorporates the examiner's report and recommended order, and attached to that was a summation of copious proof offered by both the applicant and protestants.

The conclusion reached by the majority flows from its disregard of many portions of the six-page report of the examiner and its attention to only two conclusionary paragraphs of that document which paragraphs it reads with a hostile eye. I should think that all parts of the report should be examined. When we do that we learn that twenty public witnesses asked for better service than they now receive and only one public witness appeared against the applicant. There were findings

of four-fold growth in the public's use of mobile homes over a ten-year period, and that this increase was to the extent of almost 25,000 units during the year prior to the hearing. Texas plants which fabricate such units have increased from 43 in 1968 to 126 at the time of the hearing and other plants are being built. Paralleling this exceptional growth of the mobile home industry, there has been an increase in what the witnesses called "bootlegging" by unauthorized transporters of mobile homes. In 1966 there were 18 cases of illegal transportation whereas in 1970 there were 281 cases filed against illegal carriage of such units. Applicant's public witnesses testified that the protestants have been unable to supply transportation when needed. The commission found that the application is supported by manufacturers located in every part of Texas who ship, receive and influence the movements of such units from and between points scattered throughout Texas.

"In consideration of the above," that is, the recitals contained in the foregoing parts of the report, the examiner concluded that the two protestants are not providing fully adequate service for handling the intrastate traffic in such units, the proposed new service is required by the public convenience and necessity, and the new service will result in improvement in existing service. The examiner concluded that any loss of intrastate traffic to the protestants would be more than offset by the increase in the traffic which is resulting from the growth in the mobile home industry.

The majority cites in support of its decision, Miller v. Railroad Commission, 363 S.W.2d 244 (Tex.1963); Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W.2d 759 (1951) and Thompson v. Hovey Petroleum Co., 149 Tex. 554, 236 S.W.2d 491 (1951), neither of which has an order comparable to the one here questioned. More recently this court wrote Alamo Express, Inc. v. Railroad Commission, 407 S.W.2d 479, 485 (Tex.1966), wherein we said concerning those three cases:

In *Miller*, the finding of fact was embodied in a single sentence, which was clearly inadequate. In *Thompson,* the order contained a recital of the evidence but no findings of fact from the evidence. In *Hovey*, railroads as well as motor carriers protested the grant of additional authority to an applicant. The order found that an inadequate number of tank cars were furnished by the railroads but wholly failed to find that an inadequate number of tank trucks were furnished by the protesting motor carriers. It was a case of no finding at all upon the material issues.

This court recently considered the application for writ of error in Morgan Drive Away, Inc. v. Railroad Commission of Texas, 483 S.W.2d 320 (Tex.Civ.App.1972, writ ref'd n. r. e.), wherein the same two protestants urged the same làck of full and complete findings in the commission's order which granted a certificate to Warfield Walker to transport mobile homes in northeast Texas. The commission's findings followed the same format as that employed in this case. The commission invoked its common knowledge of the "tremendous increase in the use and transportation of mobile homes in Texas within the last ten years" as well as the increase in recreational facilities and the mobility of college students who use mobile homes. The court of civil appeals concluded in that case, as did this court, "that a court upon reading them [the findings] can fairly and reasonably say that they either do or do not support the required ultimate statutory findings of inadequacy of the services and facilities of existing carriers and a genuine public need for the proposed service." Miller v. Railroad Commission, *supra.*

I would conclude that proof of an exceptional growth of a new industry over a short time-span, and a projected continua-

tion of that growth would be valid findings which support the need for new competitive carrier services.

I would affirm the judgment of the trial court upholding the validity of the commission's order.

DENTON, J., joins in this dissent.